**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

| | | |
|---|---|---|
| **JAMES D. BRAGG,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.: 5:04-0623** |
| | ) | |
| **JO ANNE B. BARNHART,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-433.  This case was referred to the undersigned United States Magistrate Judge by Standing Order to consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are Plaintiff's Motion for Summary Judgment and Defendant's Motion for Judgment on the Pleadings.

The Plaintiff, James D. Bragg (hereinafter referred to as "Claimant"), filed an application for DIB on January 16, 1997, alleging disability as of April 24, 1996, due to back pain, numbness in the right leg, memory loss due to head injury, difficulty sleeping, headaches, and deep vein thrombosis. (Tr. 45, 47, 13-14.)  The claim was denied initially and upon reconsideration.  (Tr. at 82-86, 89-91.) On June 17, 1997, Claimant requested a hearing before an Administrative Law Judge (ALJ).  (Tr. at 92.)  The hearing was held on August 5, 1998, before the Honorable Valerie A. Bawolek.  (Tr. at 449-92.)  By Decision dated September 25, 1998, the ALJ determined that Claimant was not entitled to benefits.  (Tr. at 48-64.)  On May 18, 2001, the Appeals Council granted Claimant's request for

review of the hearing decision, vacated the ALJ's decision and remanded the matter for further proceedings. (Tr. at 102-05.)

On December 12, 2001, ALJ John T. Yeary held a supplemental hearing. (Tr. at 400-48.) By decision dated January 25, 2002, ALJ Yeary determined that Claimant was not entitled to benefits. (Tr. at 65-79.) The Appeals Council denied Claimant's request for review and Claimant then sought review in this Court. The Commissioner filed a Motion to Remand the case pursuant to the fourth sentence of 42 U.S.C. § 405(g), which the Court granted. See Civil Action No. 5:02-cv-1186 (S.D. W.Va.). On May 30, 2003, the Appeals Council vacated the ALJ's decision and remanded the case for further consideration. (Tr. at 113-15.) ALJ Yeary held a supplemental hearing on September 23, 2003, at which Claimant waived his appearance. (Tr. at 382-99.) Claimant requested a closed period of disability for the time period from April 24, 1996 to December 28, 2001, at which time he returned to work. (Tr. at 14, 385-86.) By decision dated December 24, 2003, the ALJ again determined that Claimant was not entitled to benefits. (Tr. at 10-27.) The ALJ's Decision became the final decision of the Commissioner on May 11, 2004, when the Appeals Council denied Claimant's request for review. (Tr. at 4-7.) On June 18, 2004, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of

2

disability claims.  20 C.F.R. § 404.1520 (2004).  If an individual is found "not disabled" at any step, further inquiry is unnecessary.  Id. § 404.1520(a).  The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.  Id. § 404.1520(b).  If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.  Id. § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  Id. § 404.1520(d).  If it does, the claimant is found disabled and awarded benefits.  Id.  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. § 404.1520(e).  By satisfying inquiry four, the claimant establishes a prima facie case of disability.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.  20 C.F.R. § 404.1520(f) (2004).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy.  McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

    In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the alleged onset date.  (Tr. at 15.) Under the second inquiry, the ALJ found that Claimant suffered from the severe impairments of herniated disc; hearing loss; depressive disorder, not otherwise specified; and borderline intellectual functioning. (Tr. at 17.)  At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1.  (Tr. at 18.)  The ALJ then found that

3

Claimant had a residual functional capacity for light work with additional limitations. (Tr. at 22.) As a result, the ALJ determined that Claimant was unable to return to his past relevant work. (Tr. at 23.) Nonetheless, the ALJ determined that Claimant could perform such jobs as laundry folder (light), vacuum thread cutter (light), garment bagger (light), polisher (sedentary); cleaner (sedentary); and plastic design applier (sedentary), which existed in significant numbers in the regional and national economies. (Tr. at 24.) On this basis, benefits were denied. (Tr. at 25-27.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals that the decision of the Commissioner in this case is supported by substantial evidence.

Claimant's Background

Claimant was born on November 24, 1952, and was 49 years old at the time he returned to

work in December 2001. (Tr. at 405.) Claimant earned his G.E.D. and received electric technology

training. (Tr. at 409.) In the past, he worked as a long wall jack setter and long wall machine operator

in a coal mine. (Tr. at 222, 173-75, 387.)

The Medical Record

The Court has considered all evidence of record, including the medical evidence and will

discuss it below as it relates to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence

because: (1) the ALJ failed to follow the directives of the Appeals Council's remand order; (2) the

ALJ failed to properly evaluate the opinions of Claimant's treating physician Dr. Kropac and

psychiatrist Dr. Faheem; and (3) the ALJ erred in analyzing Claimant's pain and credibility. The

Commissioner asserts that these arguments are without merit and that the decision is supported by

substantial evidence.

1. Failure to Follow Order of Appeals Council

Claimant first argues that the ALJ erred in failing to follow the dictates of the Appeals

Council's remand order. The Commissioner asserts that this argument is without merit.

On May 30, 2003, following this Court's remand pursuant to the Commissioner's motion, the

Appeals Council vacated the January 25, 2002, ALJ decision and remanded the case to an ALJ for

further proceedings. (Tr. at 113-15.) The Order of the Appeal Council provided that on remand, the

ALJ would do the following: (1) update the evidence on Claimant's medical condition consistent with

the guidelines in 20 C.F.R. § 404.1512-1513; (2) if warranted on the updated record, secure evidence

from a medical expert; (3) further consider the medical source statement of Ms. Bell and if only

accepting parts of the statement, expressly identify reasons for doing so; and (4) as appropriate,

obtain supplemental evidence from a vocational expert.  (Tr. at 114.)  Claimant argues that the ALJ

was therefore obligated to recontact his treating source, Dr. Kropac, in accordance with 20 C.F.R.

§ 404.1512(e), and was further obligated to secure evidence from a medical expert on the nature and

severity of Claimant's impairments.

First, the ALJ was not required to recontact Dr. Kropac. Claimant merely assumes from the

Appeals Council's language and the citation of 20 C.F.R. § 404.1512 that the ALJ had a duty to

recontact Dr. Kropac pursuant to 404.1512(e).  The Order, however, does not cite subsection (e) of

section 404.1512.  (Tr. at 114.) Instead, it cites sections 404.1512 and 404.1513.  Notably, section

404.1512(a) states as follows:

> In general, you have to prove to us that you are blind or disabled.  Therefore, you
> must bring to our attention everything that shows that you are blind or disabled.  This
> means that you must furnish medical and other evidence that we can use to reach
> conclusions about your medical impairment(s) and, if material to the determination
> of whether you are blind or disabled, its effect on your ability to work on a sustained
> basis.

20 C.F.R. § 404.1512(a) (2004).  Additionally, the Regulations provide that the Social Security

Administration will "make every reasonable effort to help you get medical reports from your own

medical sources when you give us permission to request the reports." Id. § 404.1512(d).  Section

404.1512(e) provides that a treating source will be recontacted by SSA when the evidence received

from that source is inadequate for the Commissioner to determine whether the claimant is disabled.

As the Commissioner notes, there is no indication that evidence from Dr. Kropac was

inadequate for the Commissioner to determine whether Claimant was disabled. Notably, the Claimant

does not argue that the evidence was inadequate.  Although Dr. Kropac's report was not afforded any

weight, this does not mean it was inadequate; rather, the ALJ found that it was inconsistent with the

other evidence of record. (Tr. at 22.)  Additionally, the ALJ sent letters to Claimant and his attorney

in June 2003 requesting any additional evidence Claimant wished to present. (Tr. at 116-17, 241.) Claimant then submitted additional records from the VA Medical Center in July 2003. (Tr. at 373-81.) Accordingly, the Commissioner complied with the directives of the remand order by requesting any additional evidence from the Claimant and holding a supplemental hearing.

Claimant also argues that the ALJ failed to secure evidence from a medical expert regarding the nature and severity of his impairments. Claimant asserts that a medical expert was necessary because the ALJ failed to obtain an updated record. The Court has already found that the ALJ complied with the directive to update the medical record; thus, if this is the basis for the second part of Claimant's argument, the argument is without merit. Further, the order of the Appeals Council states that a medical expert should be utilized "if warranted on the updated record." (Tr. at 114) (emphasis added.) The ALJ obviously determined that a medical expert was not necessary based upon the evidence of record. The Regulations indicate that the decision to call a medical expert is at the ALJ's discretion. See 20 C.F.R. § 404.1527(f)(2)(iii) (2004) ("Administrative law judges may also ask for and consider opinions from medical experts on the nature and severity of your impairment(s) . . . .") (emphasis added). Claimant provides no further reason why the ALJ should have called a medical expert. Accordingly, Claimant's argument is without.

2. Treating and Examining Physicians' Opinions

Claimant next argues that the ALJ erred in failing to give appropriate weight to the opinions of Dr. Kropac, his treating physician, and Dr. Faheem, an examining psychiatrist. The Commissioner asserts that this argument is without merit.

Every medical opinion received by the ALJ must be considered in accordance with the factors set forth in 20 C.F.R. § 404.1527(d). These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3)

supportability, (4) consistency (5) specialization, and (6) various other factors.  Additionally, the regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."   Id. § 404.1527(d)(2).

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability.  See 20 C.F.R. § 404.1527(d)(2) (2004).  Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence."  Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. § 404.1527(d)(2) (2004).  The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits.  20 C.F.R. §§ 404.1527(d)(2) (2004).  Ultimately, it is the responsibility of the Commissioner, not the court to review the case, make findings of fact, and resolve conflicts of evidence.  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  As noted above, however, the court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational.  Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1994).


If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. § 404.1527.  These factors include: (1) Length of the treatment relationship and frequency of evaluation, (2) Nature and extent of the treatment relationship, (3)

Supportability, (4) Consistency, (5) Specialization, and (6) various other factors.  Additionally, the regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."  Id. § 404.1527(d)(2).

Under § 404.1527(d)(1), more weight is given to an examiner than to a non-examiner. Section 404.1527(d)(2) provides that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources).  Section 404.1527(d)(2)(I) states that the longer a treating source treats a claimant, the more weight the source's opinion will be given.  Under § 404.1527(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion.  Section 404.1527(d)(3), (4), and (5) adds the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty).

Claimant argues that the ALJ did not give appropriate weight to the opinion of his treating physician, Dr. Kropac.  Dr. Robert Kropac evaluated Claimant on several occasions for low back pain. In May 1996, Dr. Kropac diagnosed "lumbosacral musculo-ligamentous strain superimposed on degenerative disk disease with associated mild spinal stenosis at L3-L4, L4-L5 levels secondary to the compensable injury of 4-24-96." (Tr. at 295.) In February 1997, Dr. Kropac examined Claimant and noted that he had tenderness over the lumbosacral spine and buttocks and less than full range of motion in the lumbosacral spine. (Tr. at 290.) Neurological examination was objectively

normal. (Tr. at 290.)  In April and May 1997 Dr. Kropac noted tenderness over the lumbosacral spine and straight leg raising tests were positive in the right lower extremity. (Tr. at 286, 288.) Claimant was prescribed Tylenol 3 and advised to continue his G.E.D. training. (Tr. at 286-87, 289.) On July 1, 1997, Claimant had a normal neurological examination, but had tenderness over the lumbosacral spine. (Tr. at 305-06.)

In August 2001, Dr. Kropac again examined Claimant. (Tr. at 329-37.)  Claimant had tenderness and decreased range of motion in the lumbosacral spine and positive straight leg raising. (Tr. at 332.)  However, he had full range of motion in all other joints of the lower extremities, normal motor strength, and normal sensation, pulses, and deep tendon reflexes in the lower extremities. (Tr. at 332.) He was able to squat and do heel and toe walking, and his gait was not antalgic in nature. (Tr. at 332.)  Dr. Kropac opined that Claimant was "unable to engage in any substantial, gainful employment based on age, education, work history, residual functional capacity, as well as the combined effect of his impairments." (Tr. at 332.)  Dr. Kropac completed a form questionnaire on which he opined that Claimant was capable of low stress jobs; could sit for 45 minutes at a time; could stand for 45 minutes at a time; could stand/walk a total of about 2 hours in an eight-hour work day; could sit a total of about 2 hours in an eight-hour work day; would require a sit/stand option at will; could occasionally lift/carry 20 pounds and frequently lift/carry 10 pounds. (Tr. at 335-36.)

The ALJ noted Claimant's evaluations and relationship with Dr. Kropac and Dr. Kropac's opinions. (Tr. at 16, 20, 22.)  The ALJ cited Dr. Kropac's findings from the 1997 and 2001 evaluations, and the opinions stated on the 2001 assessment. (Tr. at 16.) The ALJ likewise summarized the other medical evidence of record. (Tr. at 16-22.) In so doing, the ALJ determined

10

that Dr. Kropac's assessment of Claimant's abilities for standing/walking and sitting in an eight-hour day was inconsistent with the other evidence of record. (Tr. at 22.)

A lumbar MRI in May 1996 showed only mild findings and no obvious evidence of nerve root impingement. (Tr. at 20, 244.)  Dr. Kropac's 1997 evaluation revealed some tenderness over the lumbosacral spine but a normal neurological examination. (Tr. at 20, 305-06.)  In 1998, Dr. Evans noted that straight leg raising tests were negative bilaterally, Claimant walked normally, and muscle strength was 5/5 in all areas, including grip strength.[1] (Tr. at 309, 312-13.)  Claimant had normal range of motion except for slightly decreased flexion extension of the lumbar spine. (Tr. at 309.)  In August 2001, Claimant was able to heel and toe walk without evidence of weakness, his gait was not antalgic in nature, and he had full range of motion of all the joints of the lower extremities. (Tr. at 20, 332.)  State agency physicians who reviewed the record in 1997 found that Claimant was capable of performing light work with postural limitations. (Tr. at 268-83.)  Additionally, although Claimant asserts that Dr. Evans's assessment of Claimant's abilities supports Dr. Kropac's assessment, the ALJ noted that Dr. Evans's assessment was based upon Claimant's subjective assertions rather than upon objective findings and was therefore given little weight. (Tr. at 21-22, 313-15.)

Additionally, the ALJ noted Dr. Kropac's statement that Claimant was completely unable to work based upon vocational factors and the combination of his impairments. (Tr. at 332.)  The ALJ found, however, that this opinion was a vocational, not a medical assessment and was outside

---

[1]  Muscle strength is sometimes assessed on a scale of 0 to 5, with 0 indicating no movement, 1 indicating trace movement, 2 indicating movement with the aid of gravity, 3 indicating movement against gravity but not resistance, 4 indicating movement against resistance supplied by the examiner, and 5 indicating normal strength. The Merck Manual of Diagnosis and Therapy 1347 (Mark H. Beers, M.D. & Robert Berkow, M.D., eds., 17th ed. 1999).

of Dr. Kropac's expertise. (Tr. at 22.) Although Claimant takes issue with this analysis, it is clear that Dr. Kropac considered vocational factors in making the statement.  Additionally, a statement that a claimant is completely disabled or unable to work is an opinion on an issue reserved to the Commissioner, is not a medical source opinion, and the source of such an opinion is not entitled to any special significance. See 20 C.F.R. § 404.1527(e)(1)-(3) (2004) (stating that a statement by a medical source that you are "disabled" or "unable to work" is an opinion on an issue reserved to the Commissioner, the source of which is not entitled to any special significance). Accordingly, the ALJ properly considered the opinion and assessment of Dr. Kropac in accordance with the applicable law and Regulations.  The ALJ's determination is supported by substantial evidence.

Claimant argues that the Vocational Expert (VE) at the administrative hearing testified that if Dr. Kropac's findings were accepted, there would be no work which a person with those limitations could perform. (Tr. at 390-91.)  A hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence.  See Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987); see also Pickney v. Chater, 96 F.3d 294, 296-7 (8th Cir. 1996) (holding that "a hypothetical question posed to a vocational expert must capture the concrete consequences of claimant's deficiencies"); Osenbrock v. Apfel, 240 F.3d 1157, 1163-64 (9th Cir. 2001) (stating that "An ALJ must propose a hypothetical to a vocational expert that is based on medical assumptions supported by substantial evidence in the record that reflects each of the Claimant's limitations."). As the ALJ adequately explained, Dr. Kropac's findings were inconsistent with the evidence of record and therefore not adopted.  Accordingly, the VE did not need to consider those findings and

the ALJ did not adopt the hypothetical question posed to the VE which incorporated those findings.[2]

Claimant also asserts that the ALJ failed to properly evaluate the opinion of psychiatrist Dr. Faheem.  Dr. Ahmed Faheem performed a one-time psychiatric evaluation of Claimant on August 28, 1997. (Tr. at 297-99.)  Claimant reported depression and difficulty concentrating. (Tr. at 297.) He stated that he was studying for his G.E.D. examination and noted that he occasionally went fishing and watched television. (Tr. at 298.)  On mental status examination, Claimant was oriented, but attention and concentration were impaired. (Tr. at 298.)  Memory and recall for recent events were slightly impaired and judgment was intact. (Tr. at 298.) Dr. Faheem diagnosed depression and assessed Claimant's GAF at 55, indicating moderate symptoms.[3] (Tr. at 298.)  Dr. Faheem opined that "a combination of his physical and psychiatric impairment make him disabled from being gainfully employed." (Tr. at 299.) Dr. Faheem further opined that Claimant was not a candidate for successful rehabilitation. (Tr. at 299.)

In assessing Dr. Faheem's opinion, the ALJ noted that Dr. Faheem based his opinion on both mental and physical components, which was outside of his expertise. See 20 C.F.R. § 404.1527(d)(5)

---

[2]  Claimant briefly mentions that in his prior decision, the ALJ determined that Claimant required a sit/stand option, but in the decision under review, determined that he did not.  Claimant incorrectly states that the VE could identify no jobs such a person with Claimant's vocational factors and limitations, including a sit/stand option, could perform. (Pl.'s Br. at 13.)  In reality, the VE testified that a person with Claimant's vocational factors and limitations, including an at will sit/stand option, could still perform the jobs of garment bagger, polisher and cleaner. (Tr. at 392-93.)  Only three of the six jobs identified by the VE were eliminated by a sit/stand option, meaning that there were still a significant number of jobs existing in the national economy which Claimant could perform, even if he required a sit/stand option.  Thus, had the ALJ determined that Claimant required a sit/stand option, Claimant would nonetheless be deemed not disabled.

[3]  The Global Assessment of Functioning ("GAF") Scale is used to rate overall psychological functioning on a scale of 0 to 100.  A GAF of 51-60 indicates that the person has "[m]oderate symptoms . . . or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") 32 (4th ed. 1994).

(2004).  As the Commissioner notes, Dr. Faheem did not perform any physical examination of Claimant.  The ALJ further found that Dr. Faheem's opinion that Claimant would not be a successful candidate for rehabilitation was inconsistent with the fact that Claimant later obtained his G.E.D. and completed electrician training through a vocational rehabilitation program. (Tr. at 22.) Additionally, Dr. Faheem assigned Claimant a GAF of 55, indicating only moderate symptoms, but yet opined that he was completely disabled.  Further, the undersigned notes that similar to Dr. Kropac's opinion, Dr. Faheem's opinion that Claimant was totally disabled is an opinion on an issue reserved to the Commissioner, and is not considered a medical source opinion pursuant to the Regulations. Id. § 404.1527(e).

The ALJ relied upon the 2001 assessment of psychologist Sunny Bell in determining Claimant's RFC. (Tr. at 22.) Ms. Bell evaluated Claimant and found that his social functioning was mildly impaired and concentration, persistence and pace were within normal limits. (Tr. at 320-23.) Ms. Bell opined that Claimant had a "poor" ability (seriously limited but not precluded) to deal with work stresses due to depression; to understand, remember, and carry out complex job instructions; to behave in an emotionally stable manner; and to relate predictably in social situations. (Tr. at 325-26.)  The ALJ thus limited Claimant to light work which was low-stress, required no public contact, limited supervisor and co-worker contact, and only simple, repetitive tasks. (Tr. at 22.)  Claimant argues that Ms. Bell's opinion supports Dr. Faheem's, but notably Ms. Bell did not find Claimant completely disabled. (Tr. at 323.)  Accordingly, the ALJ's treatment of Dr. Faheem's opinion was proper and the decision is supported by substantial evidence.

Based upon the foregoing, the ALJ's determination to give little or no significant weight to the opinions of Dr. Kropac and Dr. Faheem is consistent with the applicable law and Regulations

14

and is supported by substantial evidence.

3. <u>Pain and Credibility Assessment</u>

Finally, Claimant argues that the ALJ erred in assessing his pain and credibility. The Commissioner asserts that this argument is without merit.

A two-step process is used to determine whether a claimant is disabled by pain.  First, objective medical evidence must show the existence of a medical impairment that reasonably could be expected to produce the pain alleged.  20 C.F.R. § 404.1529(b) (2004); SSR 96-7p; <u>see also</u> <u>Craig v. Chater</u>, 76 F.3d 585, 594 (4th Cir. 1996).  If such an impairment is established, then the intensity and persistence of the pain and the extent to which it affects a claimant's ability to work must be evaluated.  <u>Craig</u>, 76 F.3d at 595.  When a claimant proves the existence of a medical condition that could cause pain, "the claimant's subjective complaints [of pain] must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence."  <u>Mickles v. Shalala</u>, 29 F.3d 918, 919 (4th Cir. 1994).  Objective medical evidence of pain should be gathered and considered, but the absence of such evidence is not determinative.  <u>Hyatt v. Sullivan</u>, 899 F.2d 329, 337 (4th Cir. 1990).  A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence.  20 C.F.R. § 404.1529(c)(4) (2004).  Additionally, the regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons. . . .  Factors relevant to your symptoms, such as pain, which we will consider include:
>
> (i) Your daily activities;

(ii) The location, duration, frequency, and intensity of your pain or other symptoms.

(iii) Precipitating and aggravating factors;

(iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

(v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

(vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3) (2004).

SSR 96-7p repeats the two-step regulatory provisions:

First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms. * * * If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms, the symptoms cannot be found to affect the individual's ability to do basic work activities.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p, 1996 WL 374186 (July 2, 1996). Significantly, SSR 96-7p requires the adjudicator to

16

engage in the credibility assessment as early as step two in the sequential analysis; i.e., the ALJ must consider the impact of the symptoms on a claimant's ability to function along with the objective medical and other evidence in determining whether the claimant's impairment is "severe" within the meaning of the regulations.  A "severe" impairment is one which  significantly limits the physical or mental ability to do basic work activities.  20 C.F.R. § 404.1520(c).

Craig and SSR 96-7p provide that although an ALJ may look for objective medical evidence of an underlying impairment capable of causing the type of pain alleged, the ALJ is not to reject a claimant's allegations solely because there is no objective medical evidence of the pain itself.  Craig, 76 F.3d at 585, 594; SSR 96-7p ("the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.").  For example, the allegations of a person who has a condition capable of causing pain may not be rejected simply because there is no evidence of "reduced joint motion, muscle spasms, deteriorating tissues [or] redness" to corroborate the extent of the pain.  Id. at 595.  Nevertheless, Craig does not prevent an ALJ from considering the lack of objective evidence of the pain or the lack of other corroborating evidence as factors in his decision.  The only analysis which Craig prohibits is one in which the ALJ rejects allegations of pain solely because the pain itself is not supported by objective medical evidence.

In the instant case, the ALJ clearly cited Craig and the requirements of the applicable law and Regulations regarding the assessment of pain and credibility. (Tr. at 18-19.)  The ALJ found, at the first step of the analysis, that "[r]esolving doubts in the claimant's favor, the undersigned will find that the claimant has produced evidence of impairments that could reasonably be expected to cause the type of pain and other symptoms he alleges, but his complaints suggest a greater severity

than can be shown by the objective medical evidence alone." (Tr. at 19.)  Thus, the ALJ made an adequate threshold finding and proceeded to the second step of the pain analysis.[4]

At the second step of the analysis, the ALJ assessed the intensity and persistence of Claimant's pain. (Tr. at 19-21.)  Claimant's assertion that the ALJ "fails to note the seven factors that must be assessed and does not explain who [sic] he reaches his conclusion" is simply wrong. A reading of the ALJ's decision shows a thorough pain analysis and a listing and discussion of the requisite factors to be considered at the second step. (Tr. at 19-21.)  The ALJ considered Claimant's testimony from the December 2001 hearing (the most recent hearing Claimant attended) as well as the other evidence of record and determined that Claimant was only partially credible.  (Tr. at 19.)

The ALJ summarized Claimant's testimony in his decision, noting that Claimant stated that his back and his legs were his primary problems. (Tr. at 19, 416.)  The ALJ thus noted the nature and location of the Claimant's pain, and further noted the testimony that his legs hurt when he walked  and that the degree of pain was usually a seven on a scale of 1-10, with 10 being the worst. (Tr. at 19, 417, 419.) He further noted Claimant's statement that his legs sometimes went numb. (Tr. at 19, 420.) The ALJ considered Claimant's pain medication, noting that Claimant took medication which made him drowsy and nervous and did not provide as much relief as it used to. (Tr. at 19,

---

[4]  The Court further notes that the ALJ found that Claimant had severe impairments as previously noted, which is often enough of a finding at the threshold inquiry. In Ketcher v. Apfel, 68 F.Supp.2d 629, 651 (D. Md. 1999), the ALJ did not explicitly find that the claimant's pain could result from the medically determined impairments, but the Court found that "it is clear that the ALJ made this determination since he noted that the impairments were 'severe' and affected his functional capacity." Ketcher, 68 F.Supp.2d at 650-51. The Court held that "a lack of an explicit finding at the first step of the required pain analysis does not constitute reversible error if the ALJ cites to substantial evidence to support his overall finding on [the claimant's] subjective complaint of pain." Id. at 651; but see  Hill v. Commissioner of Social Security, 49 F.Supp.2d 865 (S.D. W. Va. 1999) (Hallanan, S.D.J.).

418.) He further noted Claimant's testimony that he had a TENS unit, received physical therapy, received steroid injections, took aspirin, and that hot baths helped the pain some. (Tr. at 19, 418-20.) He further noted that Claimant reported using a heating pad and lying down or reclining to relieve pain. (Tr. at 20.)  The ALJ further noted Claimant's 2001 testimony regarding his daily activities, but also looked to other documents in the record reflecting Claimant's reported activities during the relevant time period. (Tr. at 20-21.)   Additionally, the ALJ summarized Claimant's testimony regarding his nerves and the symptoms and treatment of such, including a prescription for Paxil. (Tr. at 20.)

Despite Claimant's arguments, it appears that the ALJ did consider all of the requisite factors.  The ALJ concluded, however, after considering all of the evidence, that Claimant was not fully credible. (Tr. at 20-21.) He noted that Claimant alleged constant pain in the back and legs, but reported a varying degree of pain and engaged in symptom magnification. (Tr. at 20.) He noted that Claimant reported a pain level of 5-6 out of 10 during a 1996 functional capacity evaluation and a level of 9 out of 10 in his 2001 hearing. (Tr. at 20, 248, 419.)  Nevertheless, the ALJ noted that the record showed that Claimant was last treated for his back in July 1997 and had received no further treatment.[5] (Tr. at 20.)  The ALJ noted that such a lack of treatment was inconsistent with disabling pain. (Tr. at 21.) Further, the ALJ noted that symptom magnification signs were observed during a 1996 functional capacity evaluation. (Tr. at 20, 247-48.)

The ALJ found that the Claimant's allegations of disabling pain were inconsistent with the medical evidence of record. (Tr. at 20.)  A lumbar MRI in May 1996 showed only mild findings and

---

[5]  Claimant went to the VA in October 2000 with a primary complaint of abdominal pain, but it was noted that he had chronic back pain. (Tr. at 370-71.)

no obvious evidence of nerve root impingement. (Tr. at 20, 244.)  Dr. Kropac's 1997 evaluation revealed some tenderness over the lumbosacral spine but a normal neurological examination. (Tr. at 20, 305-06.)  In 1998, Dr. Evans noted that straight leg raising tests were negative bilaterally, Claimant walked normally, and muscle strength was 5/5 in all areas, including grip strength. (Tr. at 309, 312-13.)  Claimant had normal range of motion except for slightly decreased flexion extension of the lumbar spine. (Tr. at 309.)  In August 2001, Claimant was able to heel and toe walk without evidence of weakness, his gait was not antalgic in nature, and he had full range of motion of all the joints of the lower extremities. (Tr. at 20, 332.)

The ALJ further found that Claimant's inconsistent statements regarding his daily activities weighed against a fully favorable credibility finding. (Tr. at 20-21.)  The ALJ noted that in December 2001, Claimant reported very few activities, stating that he did not visit or receive visits and only went out to go to the store or the Post Office. (Tr. at 21, 422.)  He did not do any house cleaning, did not mow the grass, did not have a television, and had not hunted or fished since 1995. (Tr. at 21, 422-24.) Despite this testimony, the ALJ noted that only two months prior, in October 2001, Claimant reported to psychologist Sunny Bell that he performed housework, did laundry, dishes, shopping and yard work. (Tr. at 21, 322.)  He reported sitting outdoors in nice weather and driving, as well as visiting friends and family. (Tr. at 21, 322.)  He reported having a girlfriend, enjoyed eating out and occasionally went to the mall. (Tr. at 21, 322.)  Additionally, the ALJ found that Claimant's educational pursuits were inconsistent with disabling pain complaints. (Tr. at 21.) The ALJ noted Claimant's testimony that his G.E.D. classes were three hours a day, five days per week for about one year. (Tr. at 21, 426-27.) Further, he completed electrician training in Beckley where he attended school three hours a day, five days per week for two years. (Tr. at 21, 427.)

20

After considering all of the evidence, the ALJ concluded that Claimant retained the residual functional capacity for light work with additional limitations, including: never climbing ladders, ropes, or scaffolds; only occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching, or crawling; avoiding concentrated exposure to temperature extremes, noise, vibration, and hazards; experienced mild to moderate pain but could be attentive to and carry out assigned work tasks; would require low stress work, and no public contact; limited co-worker and supervisor contact; and work involving simple, repetitive tasks. (Tr. at 22.)  The ALJ's RFC determination is further bolstered by the opinions of two state agency physicians who reviewed the record and determined that Claimant was capable of performing light work. (Tr. at 268-83.)  The ALJ yet limited Claimant further than the state agency physicians.  Based upon a review of the record, the ALJ's determination was proper and supported by substantial evidence.

The ALJ considered the evidence of record in light of the applicable law and Regulations in assessing Claimant's pain and credibility and the finding is supported by substantial evidence of record.

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the District Court **DENY** the Plaintiff's Motion for Summary Judgment, **GRANT** the Defendant's Motion for Judgment on the Pleadings,  **AFFIRM** the final decision of the Commissioner and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber, Chief United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then

ten days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Chief Judge Faber, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to counsel of record.

Date: August 8, 2005.

R. Clarke VanDervort
United States Magistrate Judge